UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRACY RUSSELL,

        Petitioner,

                                      CASE NO. 15-10932
v.                                HONORABLE NANCY G. EDMUNDS

DUNCAN MACLAREN,

        Respondent.

_____/

**OPINION AND ORDER**
**DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS,**
**DENYING A CERTIFICATE OF APPEALABILITY, AND**
**<u>GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL</u>**

Petitioner Tracy Russell has filed a *pro se* habeas corpus petition challenging his

convictions for aggravated stalking, Mich. Comp. Laws § 750.411i(2), and larceny in a

building, Mich. Comp. Laws § 750.360.  He alleges as grounds for relief that (1) there

was insufficient evidence at trial to support his stalking conviction, (2) the trial court

erred by admitting "other acts" evidence and testimony about a personal protection

order (PPO), (3) the prosecutor committed misconduct during closing arguments, and

defense counsel was ineffective for failing to object to the misconduct, (4) the jury

instructions were deficient, and defense counsel was ineffective for failing to object to

the instructions, (5-6) the trial court erred when sentencing him, and defense counsel

was ineffective for failing to object to the errors, (7) the police failed to advise him of his

constitutional rights before interviewing him, (8) he was denied discovery materials, and

(9) the trial court erred by allowing the prosecutor to amend the dates in the charging

document.  Respondent Duncan Maclaren argues in an answer to the habeas petition

that Petitioner's claims are procedurally defaulted, not cognizable on habeas review, or meritless. The Court agrees that Petitioner's claims do not warrant habeas relief. Accordingly, the petition will be denied.

## I. Background

The charges against Petitioner arose from allegations that he stole his girlfriend's jewelry while the two of them were living together and that he harassed the girlfriend after she ended her relationship with him and he moved out of her home. Petitioner was tried before a jury in Jackson County Circuit Court. The Michigan Court of Appeals summarized the evidence at trial as follows:

> Defendant telephoned the victim repeatedly and sent her scores of text messages after she ended their relationship. The victim felt threatened by some of defendant's text messages, including messages in which defendant told her he would "holler" at her; the victim believed "holler" was defendant's way of saying he was going to hurt her. Defendant also sent the victim a text message in which he told her, "[c]ould put red on that yellow sweatshirt, don't want to make a M with the people in the red truck around. LOL. For blood and he know why, so believe it." At the time she received this message, the victim was wearing a yellow sweatshirt inside her home and had not left home while wearing it. There was also a red truck parked outside her home. The victim believed that this message meant that defendant wanted to harm or kill her. The victim also believed that defendant followed her when she left her home. She obtained a personal protection order (PPO) against defendant on September 8, 2011. Defendant continued to telephone the victim despite being present at the hearing at which a PPO was issued that prevented him from contacting the victim.

*People v. Russell*, No. 310278, 2013 WL 3239751, at *1 (Mich. Ct. App. June 27, 2013) (unpublished).

The prosecutor maintained that Petitioner was guilty of aggravated stalking on the basis of two different theories: (1) Petitioner violated the PPO and (2) he made a credible threat against the complainant. Petitioner did not testify or present any

witnesses. His defense to the stalking charge was that the complainant never admitted to being terrorized, frightened, intimidated, harassed, or molested, as required by the statute. As for the larceny charge, Petitioner maintained that the prosecutor failed to prove beyond a reasonable doubt that the jewelry in question actually existed. On March 7, 2012, the jury found Petitioner guilty, as charged, of aggravated stalking and larceny in a building.

The trial court sentenced Petitioner as a habitual offender to a term of two to five years in prison for the stalking conviction and to time served (230 days) plus five years of probation for the larceny conviction. The court also ordered Petitioner to pay restitution, fines, and costs. The Michigan Court of Appeals affirmed Petitioner's convictions, *see id.*, and the Michigan Supreme Court denied leave to appeal on March 28, 2014. *See People v. Russell*, 495 Mich. 977; 843 N.W.2d 753 (2014) (table).

On March 12, 2015, Petitioner filed his habeas petition pursuant to 28 U.S.C. § 2254. Although Respondent asserts that some of Petitioner's claims are procedurally defaulted, Petitioner's claims lack substantive merit, and the Court finds it more efficient to analyze the merits of his claims than to determine whether the claims are procedurally defaulted. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), and a procedural-default analysis "adds nothing but complexity to the case," *Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010).

## II.  Standard of Review

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)."  *Harrington v. Richter*, 562 U.S. 86, 97 (2011).  "AEDPA 'sharply limits the circumstances in which a federal court may issue a writ of habeas corpus to a state prisoner whose claim was "adjudicated on the merits in State court proceedings." ' "  *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017) (quoting *Johnson v. Williams*, 568 U.S. 289, __, 133 S.Ct. 1088, 1094 (2013) (quoting 28 U.S.C. § 2254(d)).

Pursuant to § 2254, the Court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for Part II).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied

clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id.* at 411.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)."  *Renico v. Lett*, 559 U.S. 766, 773 (2010).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.* at 103.

Further, " '[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct,' unless rebutted by 'clear and convincing evidence.' "  *Holland v. Rivard*, 800 F.3d 224, 242 (6th Cir. 2015) (quoting 28 U.S.C. § 2254(e)(1)), *cert. denied*, 136 S. Ct. 1384 (2016).  Finally, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III. Analysis

**A. Sufficiency of the Evidence**

The first habeas claim alleges that the evidence at trial was insufficient to support Petitioner's conviction for aggravated stalking. Petitioner contends that he was arrested for violating a PPO even though there was no PPO in effect at the time. Petitioner further alleges that he made no credible threat to kill or inflict physical injury on the complainant. The Michigan Court of Appeals adjudicated Petitioner's claim on the merits and concluded that the evidence was sufficient for a rational jury to convict Petitioner under both of the prosecutor's theories.

#### 1. Clearly Established Supreme Court Precedent

The Supreme Court has held "that the Due Process Clause [of the Fourteenth Amendment to the United States Constitution] protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). Following *Winship*, the critical inquiry on review of a challenge to the sufficiency of the evidence supporting a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (internal citations and footnote omitted) (emphases in original).

The Supreme Court has "made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, __, 132 S. Ct. 2060, 2062 (2012) (*per curiam*). First, it is the responsibility of the trier of fact " 'to decide what conclusions should be drawn from evidence admitted at trial.' " *Id.* (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (*per curiam*)).

> And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.' "

*Id.* (quoting *Smith*, 565 U.S. at 2) (quoting *Lett*, 559 U.S. at 773).

## 2. State Law on Aggravated Stalking

The *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16. The offense in question here is aggravated stalking, which "consists of the crime of 'stalking,' M.C.L. § 750.411h(1)(d), and the presence of an aggravating circumstance specified in M.C.L. § 750.411i(2)." *People v. Threatt*, 254 Mich. App. 504, 505; 657 N.W.2d 819, 820 (2002). "Stalking" is "a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." Mich. Comp. Laws § 750.411i(1)(e).

7

The aggravated circumstances charged in this case were (1) the violation of a restraining order or an injunction and (2) the making one or more credible threats against the victim. Mich. Comp. Laws § 750.411i(2)(a) and (c). A "credible threat" is "a threat to kill another individual or a threat to inflict physical injury upon another individual that is made in any manner or in any context that causes the individual hearing or receiving the threat to reasonably fear for his or her safety or the safety of another individual." Mich. Comp. Laws § 750.411i(1)(b).

### 3. Application

The evidence at Petitioner's trial established that he violated the trial court's PPO by calling the complainant from jail after the PPO was signed. Petitioner contends that the PPO was signed after his arrest, and, therefore, the stalking charge was invalid and should have been dismissed. But he was arrested on September 7, 2011, on the basis of his threatening behavior, not the PPO, which was signed on September 8, 2011. Subsequently, on September 15, 2011, Petitioner called the complainant several times from jail, thereby violating the PPO.

In addition, the preliminary examination was held on September 22, 2011, and at that hearing, the state district court revoked Petitioner's telephone privileges. Petitioner, nevertheless, called the complainant four more times from jail after the preliminary examination. The prosecutor subsequently amended the charging document to include September 22, 2011, as one of the dates of the crime. In light of the amendment and evidence that Petitioner called the complainant after the PPO was issued, the prosecutor proved the first aggravating circumstance: violation of a restraining order.

The evidence at trial also established that Petitioner made at least one credible threat against the complainant. On a day when the complainant was wearing a yellow sweatshirt, Petitioner sent the complainant a text message, which stated:

> Could put red on that yellow sweatshirt. Didn't want to make a mess with those people in the red truck around. Laugh out Loud. For blood. And he know (sic) why, so believe it.

(Trial Tr. Vol. III, at 42, Mar. 7, 2012).

The complainant interpreted this message as a specific threat to her safety. She understood the reference to "red" to be blood and the message to mean that Petitioner wanted her dead. And because she was at home at the time and had not been outside in the yellow sweatshirt that day, she assumed that Petitioner was outside her window when he sent the message. (Trial Tr. Vol. I, at 184-85, Mar. 5, 2012.) She notified the police after she received the message, and, within approximately three hours, the police obtained a search warrant and found Petitioner inside his apartment with a rifle within fifteen or twenty feet of him. (Trial Tr. Vol. II, at 164-69, Mar. 6, 2012.)

At trial, the complainant described Petitioner's conduct as "disturbing," and she stated that she was still scared. (Trial Tr. Vol. II, at 34-35, 37, Mar. 6, 2012.) Her testimony and the testimony of other witnesses established the second aggravating circumstance: a credible threat to injure a person, causing the person to fear for her safety.

A rational juror could have concluded from the evidence taken in the light most favorable to the prosecution that Petitioner made a credible threat against the complainant and that he also violated a restraining order against him. Therefore, the evidence was sufficient to sustain Petitioner's conviction for aggravated stalking, and

the state court's adjudication of Petitioner's claim on the merits was not contrary to, or an unreasonable application of, *Jackson*. Although the state court did not cite *Jackson* in its decision, it applied the same standard, and "a state court need not cite or even be aware of [Supreme Court] cases" to avoid the pitfalls of § 2254(d)(1). *Richter*, 562 U.S. at 98 (citing *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam*)). Petitioner, therefore, has no right to relief on the basis of his challenge to the sufficiency of the evidence.

## B.  The Evidentiary Arguments

The second habeas claim contains two evidentiary arguments.  First, Petitioner argues that the trial court deprived him of his constitutional rights by permitting the prosecutor to admit evidence that Petitioner had harassed Kathy Webb, a former girlfriend.  Second, Petitioner argues that the trial court erred by permitting testimony about the PPO, because the actual PPO was not entered in evidence.  The Michigan Court of Appeals rejected both of Petitioner's arguments.

### 1.  Clearly Established Federal Law

Petitioner brings his evidentiary claims under the Michigan Rules of Evidence and state case law.  Errors in the application of state law, especially rulings regarding the admission or exclusion of evidence, usually are not questioned in a federal habeas corpus proceeding.  *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988).  A claim of improperly admitted evidence is not part of a federal court's review of a state conviction because, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).  Petitioner's claim lacks merit for the following additional reasons.

### 2. The "Other Acts" Evidence

Petitioner contends that the "other acts" evidence should not have been admitted at trial because he did not stalk Ms. Webb, he had not seen her in over ten years, and the jury was likely to assume from her testimony that he had a bad character. Petitioner also contends that his relationship with Ms. Webb was not comparable to his relationship with the complainant in the case for which he was on trial.

The Michigan Court of Appeals stated on review of this claim that the trial court did not abuse its discretion by admitting the "other acts" evidence. The Court of Appeals stated that the evidence was admitted for a proper purpose: to show Petitioner's intent and his common plan or scheme in stalking the complainant and his former girlfriend. The Court of Appeals also stated that the evidence was relevant and that any unfair prejudice caused by its admission was cured by the trial court's limiting instructions.

This Court finds no merit in Petitioner's claim because "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Consequently, the trial court's ruling that the prosecutor could elicit "other acts" evidence from Ms. Webb was not contrary to, or an unreasonable application of, any Supreme Court decision under 28 U.S.C. § 2254 (d)(1).

Furthermore, the prosecutor explained to the jury that he was admitting the evidence only to show Petitioner's pattern of behavior (how he became overly possessive and abusive when women tried to end their relationships with him) and to

rebut any defense that Petitioner repeatedly contacted the complainant because she owed him money. (Trial Tr. Vol. I, 97-99, Mar. 5, 2012.) These were acceptable reasons for admitting the evidence. *See* Mich. R. Evid. 404(b)(1) (stating that evidence of other acts may be admissible to show motive, intent, or a system of doing an act).

The trial court, moreover, instructed the jurors on the proper use of the evidence. Before Ms. Webb testified, the trial court charged the jurors not to conclude from evidence of Petitioner's conduct toward Ms. Webb that he had a propensity to commit these types of acts. The court stated that the jurors could use the evidence only for relevant purposes, such as demonstrating a particular behavior pattern or to negate claims that Petitioner made to the police or to other individuals during the investigation. (Trial Tr. Vol. II, at 121-22, Mar. 6, 2012.) The trial court read a similar instruction about other "bad acts" evidence to the jury at the close of the case. (Trial Tr., Vol. III, at 66, Mar. 7, 2012.) Given these instructions and the fact that the evidence was admissible under state law, Petitioner's rights to a fair trial and to due process of law were not violated by the admission of "other acts" evidence.

### 3. The Alleged Violation of the Best Evidence Rule

Petitioner contends that testimony about the PPO was improper because the PPO itself was not entered in evidence and because Michigan's Best Evidence Rule requires the content of a writing to be proved by the original writing. The Michigan Court of Appeals rejected this claim because the complainant had independent knowledge of the contents of the PPO apart from the writing and, therefore, under state law, her testimony did not violate the rule.

Petitioner implies that the violation of the Best Evidence Rule infringed on his right to due process, but his claim is essentially one of state law, and "errors of state law do not automatically become violations of due process." *Rivera v. Illinois*, 556 U.S. 148, 160 (2009). A state trial court's evidentiary error does not rise to the level of a federal due process claim warranting habeas corpus relief unless the error was "fundamentally unfair." *McAdoo v. Elo,* 365 F.3d 487, 494 (6th Cir. 2004) (citing *McGuire*, 502 U.S. at 69-70).

Here, the complainant applied for the PPO and was present at the hearing when the state court judge ordered Petitioner not to contact her. (Trial Tr. Vol. I, at 214, 220, Mar. 5, 2012.) Because the complainant was aware of the contents of the PPO, it was not fundamentally unfair for her to testify about the PPO without the PPO being admitted in evidence. Petitioner's right to due process was not violated, and habeas relief is not warranted on Petitioner's evidentiary claims.

## C. The Prosecutor

The third habeas claim challenges the prosecutor's closing argument. Petitioner contends that the prosecutor vouched for the complainant's credibility, shifted the burden of proof, and appealed to the jury's sympathy. Although defense counsel did not object to the remarks, Petitioner asserts that the failure to object amounted to ineffective assistance. The Michigan Court of Appeals reviewed Petitioner's claim about the prosecutor for "plain error" because Petitioner did not preserve his claim for appellate review by objecting at trial. The Court of Appeals nevertheless found no merit in Petitioner's claim and concluded that trial counsel was not ineffective for failing to object to the prosecutor's closing argument.

### 1. Clearly Established Federal Law

"Claims of prosecutorial misconduct are reviewed deferentially" in a habeas case. *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). When the issue is the prosecutor's remarks during closing argument, the "clearly established Federal law" is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168 (1986). *Parker v. Matthews*, 567 U.S. 37, __, 132 S. Ct. 2148, 2153 (2012) (*per curiam*). In *Darden*, the Supreme Court stated that

> it "is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 699 F.2d [1031, 1036 (11th Cir. 1983)]. The relevant question is whether the prosecutors' comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). Moreover, the appropriate standard of review for such a claim on writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power." *Id.*, at 642, 94 S.Ct., at 1871.

*Darden*, 477 U.S. at 181; *see also Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 852 (6th Cir. 2017) (noting that the Supreme Court's decisions in *Darden* and *DeChristoforo* "establish that, upon review of claims of prosecutorial misconduct in closing arguments, the relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process") (internal quotation marks and bracket omitted).

"The prosecution necessarily has 'wide latitude' during closing argument to respond to the defense's strategies, evidence and arguments." *Bedford v. Collins*, 567 F.3d 225, 233 (6th Cir. 2009) (quoting *United States v. Henry*, 545 F.3d 367, 377 (6th

Cir. 2008)).  The Court therefore must "analyz[e] disputed comments in the context of the trial as a whole and recogniz[e] that inappropriate comments alone do not justify reversal where the proceedings were 'otherwise fair.' " *Henry*, 545 F.3d at 377 (quoting *United States v. Young*, 470 U.S. 1, 11 (1985)).

Further, "[i]n deciding whether prosecutorial misconduct mandates that habeas relief be granted, the Court must apply the harmless error standard." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (citing *Eberhardt v. Bordenkircher*, 605 F.2d 275 (6th Cir. 1979)).  On habeas review, an error is harmless unless it had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

## 2. Application

The prosecutor's disputed remark to the jury in this case reads:

> I ask you to consider this evidence, consider the source, consider the fact that there really is no opposition to this evidence, there's nothing to contradict its validity and its impact.

(Trial Tr. Vol. III, at 31 (Mar. 7, 2012).

Petitioner contends that this remark was an appeal to the jury's sympathy for the complainant and amounted to vouching for the complainant's credibility.  Improper vouching, however, occurs when a prosecutor expresses a personal belief in a witness's credibility and implies that the prosecutor has special knowledge of facts not before the jury.  *United States v. Garcia*, 758 F.3d 714, 723 (6th Cir. 2014) (quoting *United States v. Trujillo*, 376 F.3d 593, 607 (6th Cir. 2004)).  The prosecuting attorney in Petitioner's case did not express a personal belief in the complainant's credibility.  He

also did not imply that he knew something about the complainant's credibility that was not before the jury.  And he did not incite the jurors' passions or prejudices by appealing to the jurors' emotions, rather than focusing on the relevant facts, issues, and evidence.

Whether the prosecutor shifted the burden of proof is a closer question, because his comment tended to suggest that Petitioner should have testified, produced witnesses, or presented some evidence to refute the charges.  Prosecutors may not comment on a criminal defendant's silence, *Griffin v. California*, 380 U.S. 609, 615 (1965), shift the burden of proof to the defendant, *Patterson v. New York*, 432 U.S. 197, 215 (1977), or suggest that the defendant has an obligation to produce evidence to prove his innocence, *Joseph v. Coyle*, 469 F.3d 441, 474 (6th Cir. 2006) (quoting *United States v. Clark*, 982 F.2d 965, 968-69 (6th Cir. 1993)).

Nevertheless, a prosecutor's comments during closing arguments that the State's evidence was "unrefuted" and "uncontradicted" does not necessarily violate the constitutional prohibition against commenting on the defendant's failure to testify. *Lockett v. Ohio*, 438 U.S. 586, 595 (1978).  In this case, moreover, the prosecutor's remark was brief and isolated, and the evidence of Petitioner's guilt was overwhelming. Furthermore, the trial court instructed the jurors that the attorneys' arguments were not evidence, that the jurors should base their verdict only on the admissible evidence, which was the testimony and exhibits, and that Petitioner did not have to testify, present any evidence, prove his innocence, or do anything.  (Trial Tr. Vol. I, at 62-63, 70, Mar. 5, 2012; Trial Tr. Vol. III, at 56-59, Mar. 7, 2012.)  The court's instructions served to correct any improprieties in the prosecutor's closing argument, *United States v. Crosgrove*, 637 F.3d 646, 664 (6th Cir. 2011), and "to dissipate any prejudice that may have been

caused" by the isolated remarks, *United States v. Leon*, 534 F.2d 667, 679 (6th Cir. 1976).

To conclude, Petitioner's right to a fair trial was not violated by the prosecutor's remarks, and defense counsel was not ineffective for failing to raise a meritless issue. *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). The Court therefore denies relief on Petitioner's prosecutorial-misconduct claim and the related claim about trial counsel.

## D. The Jury Instructions

The fourth habeas claim alleges that the trial court failed to instruct the jury properly on the "credible threat" element of aggravated stalking and on the word "holler." Petitioner contends that, if the trial court had properly instructed the jury, the jury would have concluded that he did not threaten the complainant with death or personal injury and, therefore, the prosecution did not prove its case beyond a reasonable doubt. Petitioner also contends that defense counsel was ineffective for not objecting to the jury instructions.

The Michigan Court of Appeals determined that Petitioner waived his claim about the jury instructions by expressing satisfaction with the jury instructions as read to the jury. The Court of Appeals rejected Petitioner's related claim about trial counsel on the basis that Petitioner abandoned the claim by failing to support his argument with authority and by failing to explain how the trial court's instructions deprived him of a fair trial. The Court of Appeals also stated that, even if the trial court's instruction on the "credible threat" element was erroneous, defense counsel's failure to object did not

prejudice Petitioner because there was sufficient evidence for the jury to convict him of aggravated stalking on the alternative basis that he violated a PPO.

## 1.  Clearly Established Federal Law

The fact that a jury instruction is incorrect under state law is not a basis for habeas relief.  *McGuire*, 502 U.S. at 71-72 (citing *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983)).  The only question on habeas review of jury instructions is whether the ailing instructions infected the entire trial with such unfairness as to deprive the petitioner of due process.  *Id.* at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).  In other words, "[t]o warrant habeas relief, 'jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair.' "  *Buell  v. Mitchell*, 274 F.3d 337, 355 (6th Cir. 2001) (quoting *Scott v. Mitchell*, 209 F.3d 854, 882 (6th Cir. 2000)).  "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law."  *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

## 2.  Application

### a.  The Lack of the Statutory Definition of "Credible Threat"

Petitioner contends that the trial court should have read the statutory definition of "credible threat," which reads:

> "credible threat" means a threat to kill another individual or a threat to inflict physical injury upon another individual that is made in any manner or in any context that causes the individual hearing or receiving the threat to reasonably fear for his or her safety or the safety of another individual.

Mich. Comp. Laws § 750.411i(1)(b).

18

The trial court instructed the jurors on the elements of aggravated stalking, including the element that there had to be a credible threat against the complainant, but the court did not define the phrase "credible threat." (Trial Tr. Vol. III, at 64, Mar. 7, 2012.) The prosecutor, however, stated during closing arguments that a "credible threat" is "a realistic threat of harm to the person." (*Id.* at 24.) Furthermore, even if the trial court's failure to read the statutory definition of "credible threat" rose to the level of a constitutional error, there was sufficient evidence to convict Petitioner of aggravated stalking on the prosecutor's alternative theory:  that he violated a PPO. The alleged error, therefore, could not have a substantial and injurious effect on the jury's verdict and was harmless.

### b.  The Lack of an Instruction on "Holler"

According to the complainant, Petitioner stated in some of his messages to her that he was going to "holler" at her. She stated that "holler" was slang and that it meant to hurt you, check in with you, make his presence known, or make some type of contact with you. She interpreted the comment as a threat. (Trial Tr. Vol. I, at 159-60, 200, Mar. 5, 2012.)

Petitioner contends that the trial court should have instructed the jury on alternative definitions of the word "holler." The complainant, however, offered more than one definition of the word, and her alternative definitions (to check with someone, to make one's presence known, or to contact someone) were not threatening. Furthermore, any error on the part of the trial court in failing to define "holler," was harmless in light of other evidence that Petitioner threatened the complainant.

In conclusion, the trial court's jury instructions did not render Petitioner's trial fundamentally unfair. It follows that trial counsel was not ineffective for failing to object to the instructions. Therefore, Petitioner is not entitled to habeas relief on the basis of his challenge to the jury instructions and the related claim about trial counsel.

## E. The Sentence

The fifth and sixth habeas claims challenge Petitioner's sentence. Petitioner alleges that the trial court erred when scoring offense variable four of the sentencing guidelines and by sentencing him to a term of two to five years in prison for aggravated stalking. Petitioner also alleges that defense counsel was ineffective for failing to object to the trial court's scoring of offense variable four and to the sentence for aggravated stalking.

The Michigan Court of Appeals concluded that Petitioner waived his right to appellate review of his claim about offense variable four by stating at sentencing that he had no objection to the score. As for Petitioner's other claims about the sentence, the Court of Appeals determined that Petitioner did not preserve the issues for appellate review and that Petitioner was not entitled to relief on any of those issues. The Michigan Court of Appeals rejected Petitioner's claim about trial counsel because it found no merit in Petitioner's underlying claims about his sentence.

### 1. Offense Variable Four

Petitioner alleges that the trial court violated his constitutional rights by scoring ten points for offense variable four of the state sentencing guidelines. Ten points is appropriate if "serious psychological injury requiring professional treatment occurred to a victim." Mich. Comp. Laws § 777.34(1)(a). Petitioner contends that there is nothing in

the record to prove that the complainant suffered serious psychological injury which required professional treatment.

This claim lacks merit, because a state court's interpretation and application of state sentencing laws and guidelines "is a matter of state concern only," *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003), and "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Although Petitioner cites the Fifth, Sixth, Ninth, and Fourteenth Amendments to the United States Constitution in support of his claim, he has not alleged how the scoring of offense variable four violated his constitutional rights. His maximum sentence of five years for aggravated stalking fell within the statutory maximum, *see* Mich. Comp. Laws § 750.411i(3)(a), and the severity of a sentence within the limits set by statute is not a basis for relief in a habeas corpus proceeding. *Townsend v. Burke*, 334 U.S. 736, 741 (1948). "As long as the sentence remains within the statutory limits, trial courts have historically been given wide discretion in determining 'the type and extent of punishment for convicted defendants.' " *Austin v. Jackson*, 213 F.3d 298, 301 (6th Cir. 2000) (quoting *Williams v. New York*, 337 U.S. 241, 245 (1949)).

Even if Petitioner's claim were cognizable on habeas review, the complainant apparently stated in her victim impact statement that she had "night terrors" and "panic attacks" and was traumatized by Petitioner's behavior. *See* Memorandum in Support of Application for Writ of Habeas Corpus, at 31. This is an indication that the complainant suffered serious psychological injury as a result of the crimes. Petitioner himself apologized to the complainant at his sentencing for the pain and suffering he had caused her. (Sentencing Tr. at 13, Apr. 25, 2012.) And even though he contends that

no expert supported the conclusion that the complainant suffered serious psychological injury, the statute does not require an expert opinion on the victim's psychological injury. The fact that the complainant may not have sought treatment also is not conclusive. Mich. Comp. Laws § 777.34(2). The Court concludes that Petitioner's claim about the scoring of offense variable four lacks merit in addition to being not cognizable on habeas review.

### 2. The Length of the Sentence for Aggravated Stalking

Petitioner contends that the trial court imposed an excessive sentence for aggravated stalking. According to Petitioner, his sentence was disproportionate to the offense and to the offender, and the trial court relied on incomplete information by failing to consider mitigating factors, such as Petitioner's family support, remorse, and acceptance of responsibility.

### a. Proportionality

Petitioner claims that his sentence was disproportionate, but the Michigan Court of Appeals noted that the sentence was within the guidelines range. As such, the Court of Appeals rejected the contention that Petitioner's sentence was excessive. The Court of Appeals concluded that the sentence was neither cruel, nor unusual.

The United States Supreme Court has said that the Eighth Amendment to the United States Constitution "does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in the judgment) (quoting *Solem v. Helm*, 463 U.S. 277, 288 (1983)).

The stalking in this case occurred while the complainant was recuperating from surgery for breast cancer. She testified that Petitioner tried to break into her home after he moved out of the house and that her father and brother-in-law had barricaded her doors to keep him out. She also claimed that Petitioner's phone calls and text messages were so frequent that she reached the point where she could not take it anymore. She could not eat, nor sleep, and she felt like a prisoner in her own home. When she did leave home, she thought that Petitioner was tracking her movements, because he would call her as soon as she pulled into her driveway. At trial, she claimed that she was still scared. (Trial Tr. Vol. I, at 168-70, 173, 179-85, Mar. 5, 2012; Trial Tr. Vol. II, at 19, Mar. 6, 2012.) At Petitioner's sentencing, the complainant stated that her cancer was nothing compared to what Petitioner had done to her (Sentencing Tr., at 15, Apr. 25, 2012), and the trial court described Petitioner's crime as "egregious," because he "terrorized [the complainant] during a very vulnerable period of her life." (*Id.* at 19.)

In light of the impact that Petitioner's crime had on the complainant, Petitioner's sentence of two to five years for aggravated stalking was not grossly disproportionate to the crime. And because Petitioner had nineteen prior misdemeanor convictions (*id.* at 11), the sentence also was not disproportionate to the offender.

### b. Mitigation Factors

Petitioner claims that the trial court failed to consider mitigating factors when sentencing him. The Michigan Court of Appeals, however, noted that state law does not require a trial court to consider mitigating evidence.

The United States Constitution also is not offended by a state court's refusal to consider mitigating factors. *Lockett v. Ohio*, 438 U.S. 586, 633 (1978) (Rehnquist, J.,

concurring in part and dissenting in part); *accord Harmelin*, 501 U.S. at 995 (noting that there is no mitigation requirement "outside the capital context, because of the qualitative difference between death and all other penalties"); *United States v. Levy*, 904 F.2d 1026, 1035 (6th Cir. 1990) (stating that "the Constitution does not require individualized sentencing in non-capital cases," and, therefore, the defendant did "not have a constitutional right to present evidence of mitigating circumstances prior to his sentencing"). Thus, the state court's rejection of Petitioner's mitigation claim was not contrary to, or an unreasonable application of, Supreme Court precedent.

### 3. Defense Counsel's Failure to Object

Petitioner asserts that defense counsel should have objected to the scoring of offense variable four and to the trial court's failure to consider mitigating factors. But the sentencing claims lack merit, and "[o]itting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013). Therefore, defense counsel was not ineffective for failing to object to Petitioner's sentence.

## F. Petitioner's Statement to the Police

The seventh habeas claim alleges that Petitioner's statement to the police was improperly introduced in evidence because the interviewing officer did not advise him of his constitutional rights when taking his statement. The Michigan Court of Appeals determined that Petitioner was not in custody during the interview and, therefore, his statement to the interviewing officer was not admitted in error.

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that

the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. . . . Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.

*Id.* at 444 (footnote omitted). The Supreme Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.*

Detective Scott Grajewski interviewed Petitioner at the Blackman-Leoni Public Safety Department on August 10, 2011. He did not advise Petitioner of his constitutional rights before questioning Petitioner, but Petitioner was not in custody at the time. Although the interview occurred at the public safety department, Petitioner willingly went to the public safety department at the detective's request. (Preliminary Examination, at 22, 25-26, Sept. 22, 2011; Trial Tr. Vol. II, at 80-81, Mar. 6, 2012.) Petitioner left the public safety department after the interview, and he admits in his habeas brief that he was not arrested until a few weeks later. *See* Memorandum in Support of Application for Writ of Habeas Corpus, at 48.) Because Petitioner's freedom of movement was not restricted during the interview, he was not "in custody," and *Miranda* warnings were not required. *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977). His claim lacks merit, and the state court's rejection of the claim was not contrary to, or an unreasonable application of, *Miranda* or *Mathiason*.

**G. Discovery**

The eighth habeas claim alleges that the trial court and prosecutor violated Petitioner's constitutional rights and his rights under the Michigan Court Rules by depriving him of discovery materials that he needed to defend himself. Petitioner points out that his attorney made several requests for discovery during the pretrial stage of his case.

The Michigan Court of Appeals rejected Petitioner's claim because he had no right to discovery under state law and because he did not seek relief at trial even though the prosecutor failed to comply with a Michigan court rule that requires timely disclosure of information. The Court of Appeals also rejected Petitioner's claim that defense counsel was ineffective for failing to request dismissal of the charges for the discovery violations. The Court of Appeals stated that a request for dismissal on the basis of minor discovery violations would have been meritless and that trial counsel was not ineffective for failing to raise a meritless objection.

Like the Michigan Court of Appeals, this Court finds no merit in Petitioner's claim because "[t]here is no general constitutional right to discovery in a criminal case," and "'the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded. . . .'" *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) (quoting *Wardius v. Oregon*, 412 U.S. 470, 474 (1973)). Furthermore, the Michigan Court of Appeals determined that Petitioner received the requested discovery items over a month before trial, and the alleged violation of a Michigan Court Rule regarding disclosure of information is not a basis for habeas relief. *McGuire*, 502 U.S. at 67–68. To the extent that there was some delay in providing Petitioner with discovery, he has

not shown that he was prejudiced by the delay.  The Court therefore concludes that Petitioner's discovery claim lacks merit and does not warrant habeas relief.

## H.  Amending the Criminal Information[1]

In his ninth and final claim, Petitioner alleges that the trial court deprived him of his constitutional rights by allowing the prosecutor to amend the criminal information after the preliminary examination to change the date of the charged crimes.  Petitioner contends that the trial court should have remanded the case for another preliminary examination after the date of the crimes was amended.  The Michigan Court of Appeals stated on review of this claim that Petitioner waived appellate consideration of his claim by withdrawing his initial objection to the amendment and expressing his approval of the amendment.

### 1.  Legal Framework

The Sixth Amendment to the United States Constitution guarantees a defendant in a criminal case the right to "be informed of the nature and cause of the accusation" against him.  U.S. CONST. amend VI.  Nevertheless, a charging document "which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings." *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986).  Additionally, Michigan Court Rule 6.112(H) permits amendments to the criminal information "before, during, or after trial . . . unless the proposed amendment would unfairly surprise or prejudice defendant."  Mich. Ct. R. 6.112(H).  Thus,

---

[1]  In Michigan, a criminal information "advise[s] an accused of the offense with which he is charged."  *People v. Gould*, 237 Mich. 156, 164; 211 N.W.2d. 346, 348 (1926).

[w]hen reviewing amendments to state charging documents in habeas corpus proceedings, the federal courts focus on the questions whether the defendant was surprised by the amendment or otherwise prejudiced in his ability to defend himself at trial. *See, e.g., Tague v. Richards*, 3 F.3d 1133, 1141–42 (7th Cir.1993); *Wright v. Lockhart*, 854 F.2d 309, 312–13 (8th Cir.1988).

. . . In the absence of a "specific indication of how the amendment prejudiced him unfairly," [*Wright*, 854 F.2d at 312], a petitioner does not establish grounds for habeas corpus relief arising from an amended Information.

*Rhea v. Jones*, 622 F. Supp. 2d 562, 583–84 (W.D. Mich. 2008).

## 2. Application

Petitioner was arrested on September 7, 2011, and on September 8, 2011, the state trial court entered a PPO, which prohibited Petitioner from communicating with the complainant. On September 15, 2011, Petitioner called the complainant nine times from jail. At the subsequent preliminary examination on September 22, 2011, the state district court revoked Petitioner's phone privileges due to Petitioner's calls to the complainant on September 15, 2011. Following the preliminary examination, Petitioner returned to jail and called the complainant four more times.

At a subsequent pretrial hearing, the prosecutor asked the state trial court for permission to amend the dates of the crime to include September 22, 2011. The prosecutor noted that aggravated stalking is a continuing offense and that Petitioner had violated the PPO by calling the complainant from jail. Defense counsel initially objected to the prosecutor's request and asked the trial court to remand the case. Defense counsel argued that the preliminary examination was conducted on the basis of different dates for the crime and that he had received no documentation supporting the

prosecutor's allegation that Petitioner called the complainant from jail on September 22, 2011.

At a later pretrial hearing on November 29, 2011, defense counsel indicated that he had received the documentation which he previously requested, and he stated that he did not care if the prosecution amended the dates for the crime. The trial commenced on March 5, 2012.

This brief summary of the pretrial stage of the case indicates that Petitioner had adequate notice of the charges and the amended dates. He was not deprived of an opportunity to present a defense or unfairly prejudiced by the amendment. Therefore, Petitioner is not entitled to habeas relief. His claim is not cognizable on habeas review, and it also lacks merit.

## IV. Conclusion

Petitioner is not in custody in violation of federal law, and the state appellate court's rejection of his claims was not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts. The decision clearly was not so lacking in justification that there was an error beyond any possibility for fairminded disagreement. Accordingly, the habeas petition is denied.

## V. Certificate of Appealability

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A certificate of appealability may issue "only if the

applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327.

Reasonable jurists could not disagree with the Court's resolution of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further. The Court therefore declines to issue a certificate of appealability. Nevertheless, if Petitioner appeals this decision, he may proceed on appeal without further authorization from this Court because he was granted leave to proceed *in forma pauperis* in this Court, and an appeal could be taken in good faith. Fed. R. App. P. 24(a)(3)(A).


s/ NANCY G. EDMUNDS
NANCY G. EDMUNDS
UNITED STATES DISTRICT JUDGE

Dated: June 1, 2017



CERTIFICATION

I hereby certify that a copy of this order was served upon counsel/parties of record on this 1st day of June, 2017 by Regular Mail and/or CM/ECF Notification.


s/ Carol J Bethel
Case Manager